**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Victoria Nez, as personal representative of the Estate of Jovita Baldwin, on behalf of the statutory beneficiary of Jovita Baldwin, | No. CV-19-08200-PCT-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| American Family Mutual Insurance Company, | |
| Defendant. | |

Pending before the Court is Defendant American Family Mutual Insurance Company's ("Defendant") Second Motion for Summary Judgment. (Doc. 34.) For the following reasons, Defendant's Motion is denied.[1]

## BACKGROUND

On October 12, 2017, Plaintiff Victoria Nez's adult sister, Jovita Baldwin, was fatally injured while crossing Camelback Road in Phoenix. Ms. Baldwin was hit by a vehicle driven by non-party Ledrius Franklin. Plaintiff is a legal guardian to Ms. Baldwin's thirteen-year-old son, Shawn, and personal representative of Ms. Baldwin's estate.

Plaintiff maintains an uninsured motorist policy with Defendant. The policy provides uninsured motorist coverage for all family members that are in the same household as Plaintiff. Upon the death of her sister, Plaintiff filed a claim for the uninsured

---

[1] Defendant requested oral argument. That request is denied because the parties have had an adequate opportunity to discuss the law and evidence and oral argument will not aid the Court's decision. *See Lake at Las Vegas Invs. Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).

1    motorist coverage.  Defendant denied Plaintiff's claim for failure to provide evidence that
2    Ms. Baldwin was Plaintiff's relative and a member of Plaintiff's household.  Plaintiff
3    claims to have provided sufficient evidence.  As a result, Plaintiff brought this action
4    against Defendant alleging breach of contract.  Defendant now moves for summary
5    judgment for the second time on the grounds that Ms. Baldwin was not living with Plaintiff
6    at the time of her death.

7                                          **DISCUSSION**

8    **I.    Legal Standard**

9            The purpose of summary judgment is "to isolate and dispose of factually
10   unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  Summary
11   judgment is appropriate if the evidence, viewed in the light most favorable to the
12   nonmoving party, shows "that there is no genuine issue as to any material fact and that the
13   movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Only disputes
14   over facts that might affect the outcome of the suit will preclude the entry of summary
15   judgment, and the disputed evidence must be "such that a reasonable jury could return a
16   verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248
17   (1986).

18           "[A] party seeking summary judgment always bears the initial responsibility of
19   informing the district court of the basis for its motion and identifying those portions of [the
20   record] which it believes demonstrate the absence of a genuine issue of material fact."
21   *Celotex*, 477 U.S. at 323.  Parties opposing summary judgment are required to "cit[e] to
22   particular parts of materials in the record" establishing a genuine dispute or "show[ ] that
23   the materials cited do not establish the absence . . . of a genuine dispute."  Fed. R. Civ. P.
24   56(c)(1).  A district court has no independent duty "to scour the record in search of a
25   genuine issue of triable fact[.]"  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

26   **II.   Analysis**

27           According to Defendant's insurance policy, an "[i]nsured person" includes "you or
28   a relative."  (Doc. 35-1 at 6.)  The policy defines "relative" as "a person **living in your**

**household**, related to you by blood, marriage or adoption." *Id.* (emphasis added).

In *State Farm Mut. Auto. Ins. Co. v. Novak*, the Arizona Court of Appeals stated that whether a person "lives with" the named insured is a factual matter to be determined by application of the six factors laid out by the Arizona Supreme Court in *Mid-Century Ins. Co. v. Duzykowski*.   167 Ariz. 363, 367, 807 P.2d 531, 535 (Ct. App. 1990).   The Arizona Supreme Court provided the following, non-exhaustive, list of factors for courts to consider in determining whether an individual is a "resident of the same household":

> [T]he individual's presence in, or absence from, the named insured's home on the date of the occurrence; the reasons or circumstances relating to the absence or presence; the relationship of the individual to the named insured; living arrangements of the individual in earlier time periods; the individual's subjective or declared intent with respect to the place of residence; the existence of a second place of lodging.

*Mid-Century Ins. Co. v. Duzykowski*, 131 Ariz. 428, 430, 641 P.2d 1272, 1274 (1982). "[N]o one [factor] is controlling, but all . . . must combine to a greater or lesser degree." *Farmers Ins. Co. of Ariz. v. Oliver*, 154 Ariz. 174, 178, 741 P.2d 307, 311 (Ct. App. 1987).

Of course, many of these factors here favor Defendant, but in *Novak* as well the factors generally favored the insurer.  Still there were factors in *Novak*, as there are here, that might allow a reasonable juror to determine that coverage existed.  Around 2010, Ms. Baldwin moved in with Plaintiff.  Plaintiff and Ms. Baldwin shared their time between Plaintiff's principal home on the Navajo Nation Reservation and Plaintiff's secondary home in Flagstaff.  In 2012, Ms. Baldwin was adjudicated mentally incompetent, and the Navajo Nation Family Court of the Chinle Judicial District appointed Plaintiff as Ms. Baldwin's legal guardian.  Shortly thereafter, Plaintiff also became the legal guardian of Shawn.

Around a year before her death, Ms. Baldwin left Plaintiff and Shawn.  Plaintiff stated the following in her deposition about Ms. Baldwin's departure:

> **Question.** Were there ever periods of time where she wasn't at home at night with you?

1     **Answer.** Yes.

2     **Q.** How often would you say that happened?

3     **A.** She left—she left us in approximately like in late 2000—she left us. I

4     can't recall the date. But she left us and I couldn't keep her.

5     **Q.** What do you mean by that?

6     **A.** I can't—she's an adult.

7     . . .

8     **Q.** Do you know approximately how long before she died that she left you?

9     **A.** Probably about a year.

10 (Doc. 35-2 at 31.)  Following the departure, Plaintiff explained that Ms. Baldwin would

11 call once or twice a month to speak with her and Shawn, but Ms. Baldwin refused to say

12 where she was staying.  *Id.* at 32, 36.  Ms. Baldwin also sent letters to Plaintiff and Shawn.

13 *Id.* at 42–43.  In a telephone conversation with Ms. Baldwin about a month prior to her

14 death, Plaintiff stated that Ms. Baldwin told her "she had wanted to come home" to the

15 house on the Reservation.  *Id.* at 36–38.[2]  Plaintiff told Ms. Baldwin that she would have

16 to think about it because it was not safe for Ms. Baldwin to be by herself.  *Id.* at 38. At that

17 time, Plaintiff only went to the house on the Reservation on the weekends.  *Id.* at 37.

18 Plaintiff explained that she would probably have made Ms. Baldwin stay with a family

19 friend on the Reservation.  *Id.* at 39.

20     Applying the factors set forth in *Duzykowski*, a reasonable jury could find in favor

21 of either party.  It is undisputed that Ms. Baldwin was absent from Plaintiff's home on the

22 day of the accident.  Therefore, *Duzykowski*'s first factor weighs heavily in Defendant's

23 favor.  A reasonable jury could further find that Ms. Baldwin's departure from Plaintiff's

24 household was permanent because Ms. Baldwin left for a year and refused to tell Plaintiff

25 _____

26 [2] Defendant argues this statement is inadmissible hearsay.  (Doc. 42 at 2, 6.)  Under Federal
Rule of Evidence 803(3), statements of then-existing mental, emotional, or physical

27 condition fall under the exceptions to the rule against hearsay.  "A statement of the
declarant's then-existing state of mind (such as motive, intent, or plan) or emotional,
sensory, or physical condition (such as mental feeling, pain, or bodily health)" is

28 admissible.  Fed. R. Evid. 803(3).  As Ms. Baldwin's statement goes to her intent at the
time, the Court can consider the statement in ruling on Defendant's Motion.

where she was living.

On the other hand, a reasonable jury could find that Ms. Baldwin's departure was temporary.  *See, e.g.*, *Oliver*, 154 Ariz. at 178, 741 P.2d at 311 (finding that, despite physical absence, a child was still a resident of his parent's household because the child's stay with his grandparents was only temporary).  A reasonable jury could find that Ms. Baldwin's statement that she "wanted to come home" indicates that Ms. Baldwin never stopped treating Plaintiff's house as her "home."  Ms. Baldwin's phone calls and letters, her departure without Shawn, and her prior absences from Plaintiff's home also potentially indicate Ms. Baldwin did not intend to permanently leave.  In addition, *Duzykowski*'s third factor supports Plaintiff because Plaintiff was Ms. Baldwin's legal guardian at the time of her death.  *See Novak*, 167 Ariz. at 369, 807 P.2d at 537 (finding that *Duzykowski*'s third factor favored the named insureds where the named insureds' daughter was unemancipated).  As there is a genuine dispute of material fact for the jury to resolve, summary judgment is denied.

## CONCLUSION

As Plaintiff's claim for breach of contract hinges on a factual dispute that must be determined by a finder of fact, Defendant's Second Motion for Summary Judgment is denied.  Accordingly,

**IT IS THEREFORE ORDERED** that Defendant's Second Motion for Summary Judgment (Doc. 34) is **DENIED.**

Dated this 18th day of November, 2020.

G. Murray Snow
Chief United States District Judge